IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>) | |
| ) | Case No. 20 CR 769 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| ) | |
| TAVERIS ANDERSON ) | |
| ) | |

**MEMORANDUM OPINION & ORDER**

Defendant Taveris Anderson has filed a motion to suppress, arguing that the police violated the Fourth Amendment when they arrested him on the curtilage of his home without a warrant. The court held an evidentiary hearing on April 21, 2021, to determine the precise location of the arrest. After reviewing the evidence and the parties' briefs, the court denies the motion (Doc. 22).

**FACTS**

At the evidentiary hearing on April 21, 2021, the officers testified to the following sequence of events. On August 28, 2020, Chicago Police Department officers set up surveillance outside of 1514 W. Garfield Boulevard, a multi-unit apartment building in Chicago, to investigate a complaint about narcotics activity in the building. The building contained approximately four to five apartment units on each of its three floors, and each unit was accessible via common hallways. The apartment building's main entrance was a common front door located on a stone porch and accessible by approximately eight steps. A small concrete pad connected the public sidewalk to the front steps of the building.

After setting up surveillance, officers observed the defendant standing in the doorway of the apartment building's main entrance. Officers observed several people walk up to defendant and engage in conversation before entering the building with defendant. Based on these observations, which corroborated earlier complaints of narcotics activity, an undercover officer approached the building and greeted defendant. Defendant invited the undercover officer inside the apartment building, where he sold the undercover officer narcotics. The undercover officer left the building and provided a description of defendant to law enforcement. A supervisory Chicago Police Department officer directed other officers to arrest defendant.

Posing as maintenance workers, two other undercover officers, Officer Betancourt and Officer Iglesias, approached the apartment building to facilitate the arrest. Officer Betancourt testified that they were concerned defendant would enter the apartment building and lock the building's front door if he saw a police vehicle approach. Once the officers approached the building, they greeted defendant, identified themselves as maintenance workers, and entered the building through the common front door. Officer Iglesias testified that he propped open the apartment building's door to facilitate the other officers' entrance into the apartment building.

After several minutes, defendant began arguing with Officer Betancourt about the propped open door. Officer Betancourt descended the apartment building's steps to collect additional building supplies from his undercover vehicle, and defendant left the building's front porch, followed Officer Betancourt down the steps, and cut off Officer Betancourt at the bottom of the steps to confront him.

At the evidentiary hearing, Officer Betancourt and Officer Murphy (the arresting officer) both testified that defendant was detained while standing with one foot on the bottom step and one foot on the concrete pad between the sidewalk and the steps.

**DISCUSSION**

Defendant's original motion (Doc. 22) argued that defendant's warrantless arrest occurred on protected curtilage—the front steps of defendant's home. After the evidentiary hearing, defendant filed a supplement to his motion (Doc. 36), adding an additional argument that the officers violated the Fourth Amendment when they prevented defendant from retreating into the sanctity of his home. The court will address each argument in turn.

I.  **Protected Curtilage**

The evidentiary hearing established that defendant was detained and arrested while standing with one foot on the apartment building's bottom step and one foot on the concrete pad separating the steps from the public sidewalk. Defendant contends that the steps and concrete pad constitute protected curtilage. He thus argues that the warrantless arrest on the curtilage violates the Fourth Amendment.

Curtilage has been described by the Seventh Circuit as the area "so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part of the home." Harney v. City of Chi., 702 F.3d 916, 924 (7th Cir. 2012) (citing United States v. French, 291 F.3d 945, 951 (7th Cir. 2002)). When determining the scope of curtilage, the court looks to four factors: (1) the proximity of the area to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the area's uses; and (4) the steps taken by the resident to protect the area from observation by people passing by. United States v. Dunn, 480 U.S. 294, 300-01 (1987).

Relying on Florida v. Jardines, 596 U.S. 1 (2013), and Collins v. Virginia, 138 S.Ct. 1663 (2018), defendant argues that the apartment building's front porch, steps, and concrete pad are all constitutionally protected curtilage. However, the Seventh Circuit has repeatedly held that

common areas used by multiple tenants are not part of an apartment unit's curtilage. See, e.g., United States v. Sweeney, 821 F.3d 893, 901 (7th Cir. 2016) (apartment's building's common basement not curtilage of defendant's apartment); Harney, 702 F.3d at 924-25 (walkway outside a condominium building but inside of a gate not curtilage); see also, United States v. Villegas, 495 F.3d 767-68 (7th Cir. 2007) (no reasonable expectation of privacy in a common hallway of a duplex building). The front porch, steps, and concrete pad are all common areas used by multiple tenants. Further, those areas are not enclosed and are open to public view and access. They are consequently not protected curtilage.

Even if the steps and concrete pad were curtilage, defendant's arrest would still be proper because defendant was "as exposed to public view and touch as if he had been standing completely outside of his home." United States v. Velazquez, 906 F.3d 554, 560 (7th Cir. 2018) (upholding warrantless arrest on defendant's private driveway at "threshold" of open attached garage). In United States v. Santana, 427 U.S. 38, 42 (1976), the Supreme Court held that the police may conduct a warrantless arrest upon probable cause on the threshold of a defendant's open front door, where she "was not merely visible to the public but as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." See also, Illinois v. McArthur, 531 U.S. 326, 335 (2001) (citing Santana for the proposition that a person standing in the doorway of a house is in a public place, and hence subject to arrest without a warrant). Here, the testimony demonstrated that defendant was not only on the threshold of the open, common front door, but that he followed Officer Betancourt down the steps, practically to the sidewalk. Defendant exposed himself to public view as if he was standing completely outside of his home—which, indeed, he was.

## II. Preventing Retreat

Defendant next contends that undercover officers prevented him from retreating into his apartment unit by propping open the common front door and standing in the hallway. Defendant cites to the officers' testimony that they propped open the common front door to prevent defendant from closing and locking the door behind him. Defendant argues that this conduct violates the Fourth Amendment. The court disagrees.

Defendant relies on a series of out-of-circuit cases to argue that officers may not "ferret out" defendants to avoid the need for an arrest warrant. However, defendant's cited caselaw is readily distinguishable. In each case, the individual was inside his home and left only because of law enforcement's show of authority. For example, in United States v. Nora, 765 F.3d 1049, 1054 (9th Cir. 2014), the Ninth Circuit found a warrantless arrest violated the Fourth Amendment when 20 to 30 officers forced a defendant to exit his home at gunpoint. And in United States v. Thomas, 430 F.3d 274, 277 (6th Cir. 2005), the Sixth Circuit found that officers' request that defendant exit his home, where he was subsequently arrested without a warrant, was neither coercive nor a violation of the Fourth Amendment.

Here, defendant was already outside of his unit and on the porch of the apartment building when the officers arrived. There is no evidence that the officers instructed defendant to leave his apartment unit or the porch area, let alone "deploy overbearing tactics that essentially force the individual out of the home." Thomas, 430 F.3d at 277. There is additionally no evidence that the officers engaged in any show of authority, coercive or otherwise. See id. (coercive police conduct includes "such a show of authority that Defendant reasonably believed he had no choice but to comply"). On the contrary, the testimony established that defendant followed the officers down the steps on his own accord to confront them, without any prompting

by either officer. The officers did not interfere with defendant's ability to retreat into the sanctity of his home. Consequently, defendant has not demonstrated a Fourth Amendment violation.

## **CONCLUSION**

For the reasons stated above, defendant's motion (Doc. 22) is denied.

**ENTER:**

**Robert W. Gettleman
United States District Judge**

**DATE: June 7, 2021**